FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| ALFRED WEST, | : | |
| Plaintiff, | : | **OPINION** |
| v. | : | Civil Action No. 01-4372 (WHW) |
| IDT CORPORATION and IDT TELECOM, INC., | : | |
| Defendants. | : | |

**Walls, Senior District Judge**

Defendants move for judgment as a matter of law pursuant to Fed. R. Civ. P. 50. The motion is granted.

**FACTS AND PROCEDURAL BACKGROUND**

This action involves the disputed terms of employment between plaintiff Alfred West ("West") and defendants (collectively "IDT"). Plaintiff met with Howard Jonas, IDT Corporation's Chief Executive Officer and Chairman of its Board of Directors, on February 3, 2001. It is undisputed that, at that meeting, Jonas drafted and Jonas and plaintiff signed a hand-written document (the "February Document") with the following terms:

"IDT and Alfred West agree that

1)  IDT will pay West $200,000 per year for 5 years

2)  Alfred will work exclusively for IDT for 5 years

3)  IDT will in six months buy 'Westco' a business to be incorporated which will contain all West's intellectual property e.g. presto and debit card business (mostly european) and any rights due from Viatel

**FOR PUBLICATION**

> 4)      If Viatel rights not transferable West will sell to IDT at cost. For next six months West will rent intellectual property for $1 for next six months
>
> IDT will pay 70,000 shares and one and a half million dollars cash each year for 5 years (or stock at West's option) to be paid in advance (first date of each year starting Feb. 13, 2001 and ending Feb. 13, 2005. (Equates roughly to $14,300,000
>
> 5)      The parties will complete formal contracts as soon as possible but this is binding
>
> 6)      West may quit if unhappy after 3 full years and payout will continue regardless
>
> 7)      Final agreement will be structured so as to best minimize taxation for all parties"

After several months during which the parties worked unsuccessfully to transfer the rights and businesses contemplated in the February Document, IDT provided plaintiff with a draft of a performance-based multi-year employment agreement. Plaintiff rejected the draft and IDT terminated his employment on August 16, 2001. Plaintiff was paid a total of $124,615.41 for his approximately six months of work.

Plaintiff filed this action on September 14, 2001. Partial summary judgment was granted on July 14, 2004, leaving only plaintiff's promissory estoppel and *quantum meruit* claims for trial. At the close of plaintiff's case at trial, defendants moved for judgment as a matter of law and the Court reserved. The jury ultimately rendered a verdict in favor of IDT on the promissory estoppel claim and in favor of West on the *quantum meruit* claim. Damages were awarded to him of $1.5 million. Judgment was entered on July 28, 2005. Defendants now renew their motion for judgment as a matter of law or, in the alternative, for a new trial or a reduction of the jury award. Plaintiff moves for prejudgment interest.

**FOR PUBLICATION**

## LEGAL STANDARD

Under Fed. R. Civ. P. 50(a):

If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

According to Fed. R. Civ. P. 50(b):

If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. . . .  In ruling on a renewed motion, the court may: (1) if a verdict was returned: (A) allow the judgment to stand, (B) order a new trial, or (C) direct entry of judgment as a matter of law.

In the Third Circuit, a Rule 50 motion should be granted:

only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability.  In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version.  Although judgment as a matter of law should be granted sparingly, a scintilla of evidence is not enough to sustain a verdict of liability.  The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party.  Thus, although the court draws all reasonable and logical inferences in the nonmovant's favor, [it appropriately enters] an order granting judgment as a matter of law if, upon review of the record, it is apparent that the verdict is not supported by legally sufficient evidence.

Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993) (internal quotations and citations omitted).  The focus of the inquiry "is not on whether there is literally no evidence supporting the unsuccessful party, but whether there is evidence upon which a reasonable jury

**FOR PUBLICATION**

could properly base its verdict. A judgment as a matter of law must be [entered] if the record is critically deficient of the minimum quantum of evidence from which the jury might reasonably afford relief." Villanueva v. Brown, 103 F.3d 1128, 1133 (3d. Cir. 1997) (citing Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083 (3d Cir. 1995).

## DISCUSSION

To recover under *quantum meruit*, a plaintiff must prove: "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) *the reasonable value of the services*." Starkey, Kelly, Blaney & White v. Estate of Nicolaysen, 172 N.J. 60, 68 (2002) (internal quotations and citations omitted) (emphasis added). In its rulings at trial, the Court limited the jury to consideration of the value of (1) West's role in developing a Belgium distribution network for the defendants, and (2) the value of West's time and services. The question now presented to the Court, then, is whether plaintiff presented adequate competent evidence for the jury to award $1.5 million in damages for the reasonable value of West's contribution to the Belgium distribution network and for his time and services.

The New Jersey Supreme Court has not definitively articulated the competent methods of establishing damages in a *quantum meruit* action. An examination of the cases indicates the character of the evidence that has previously been accepted. In Weichert Co. Realtors v. Ryan, 128 N.J. 427 (1992), as example, the court remanded a realtor's *quantum meruit* claim to the trial court for a determination of the reasonable value of services based on proofs "including evidence of customary brokers' fees for similar transactions." In addition to this type of measure, which

**FOR PUBLICATION**

examines market value, a minority of cases have examined the actual expenses incurred by the plaintiff.  See, e.g., Hudson City Contracting Co. v. Jersey City Incinerator Auth., 17 N.J. 297 (1955) (noting that "the ordinary rule for the measure of damages where the suit is based on the *quantum meruit* is the reasonable value of the services rendered," but calculating damages as the "reasonable expense of the performance of services actually rendered, but not in excess of its actual expenses, and deleting profits").

      Plaintiff points to Rowland v. Hudson County, 7 N.J. 63 (1951) for the proposition that there is flexibility in determining *quantum meruit* damages.  The New Jersey Supreme Court held that members of "skilled and learned professions . . . are not limited in the determining of reasonable compensation to the exact amount of time devoted to a project.  *There are other ways of proving the reasonable value of services*."  Id. at 74 (emphasis added).  Beyond demonstrating market value or actual expenses incurred, however, it is unclear that any additional methods are available.  Rowland seems to stand primarily for the uncontroversial proposition that there are different ways to prove market value.  Plaintiff also cites case law for the proposition that business suggestions and promised bonuses can support recovery in *quantum meruit*.  While the Court accepts these contentions, plaintiff does not cite nor is the Court aware of any cases teaching that the reasonable value of such business suggestions or bonuses need not be established by competent evidence.

      Here, plaintiff does not seek to recoup incurred expenses.  It follows that the reasonable value of his services are appropriately measured by the fair market value of similar services.  Although decided under Pennsylvania law, Combustion Sys. Servs., Inc. v. Shuylkill Energy

**FOR PUBLICATION**

Res., Inc., 1994 WL 229762 (E.D. Pa. 1994), aff'd, 52 F.3d 314 (3d Cir. 1995), is instructive. There, the court struck plaintiff's *quantum meruit* claim because plaintiff "had not demonstrated that it had any evidence of the *fair market value* of the services it performed. . . . Permitting Plaintiff to argue to the jury a particular figure which had no basis in fair market value would have been prejudicial to the Defendant." Id. at 4-5 (emphasis added). As one commentator points out, in *quantum meruit* cases where the defendant requests services from the plaintiff, "the court should generally award recovery and measure it by *the market value* of the requested services." Candace S. Kovacic, A Proposal to Simplify Quantum Meruit Litigation, 35 Am. U. L. Rev. 547, 551 (1986) (emphasis added).[1]  Although decided under Tennessee law, Chisolm v. Western Reserves Oil Co., 655 F.2d 94, 96 (6th Cir. 1981), is also informative. The circuit court held that reasonable value of services in a certain business are "to be judged by the customs and practices prevailing in that type of business." Finally, the Restatement (Second) of Contracts § 371 defines this type of restitution interest as "the reasonable value to the other party of what he received in terms of *what it would have cost him to obtain it from a person in the claimant's position*." (emphasis added).

---

[1] This article provides an excellent analysis of the complexities and resultant confusion that permeate *quantum meruit* litigation. Because the New Jersey Supreme Court has repeatedly held that "reasonable value of services" is the appropriate measure of *quantum meruit* damages, the Court does not examine the author's proposed reforms in detail. It is clear from her analysis, however, that *the amount of defendant's gain* is sometimes used to measure *quantum meruit* damages. "More courts, however, award the reasonable market value of the plaintiff's services, even when characterizing the quantum meruit claim as one in quasi-contract. Some courts award the plaintiff's costs." Id. at 556-57. This is the case in New Jersey, where *quantum meruit* claims are considered to be implied-in-law and quasi-contractual in nature and recovery is generally limited to market value or costs. See, e.g., Weichert Co. Realtors, 128 N.J. at 437.

**FOR PUBLICATION**

While "damages need not be proved with precision where that is impractical," New Jersey "law abhors damages based on mere speculation." Mosley v. Femina Fashions, Inc., 356 N.J. Super. 118, 129 (App. Div. 2002) (internal quotations omitted); see also Rowland v. Hudson County, 7 N.J. 63, 74 (1951) (excluding as speculative evidence of estimated costs as a measure of *quantum meruit* recovery for architectural work that was never completed). In a *quantum meruit* action, plaintiff must provide competent evidence "to enable a jury intelligently and fairly to place a reasonable value upon the services claimed to have been rendered." Perlberg v. Geminder, 20 N.J. Super. 191, 198 (App. Div. 1952).

## I. The Belgium Distribution Network

On the issue of the Belgium distribution network, plaintiff argues that "[a]rmed with the evidence of both *IDT's revenues and profit margins*, the jury could easily determine the reasonable amount of compensation for West's contribution to the Belgian network, which together with his business acumen and strategy, enabled IDT to profit from the Belgium market." (Opp'n Br. at 11) (emphasis added). Plaintiff also argues that business suggestions or contributions can support recovery in *quantum meruit* and point to the following categories of evidence: (1) "West presented evidence that prior to his employment at IDT, IDT had shut down its Belgium business"; (2) "IDT employees admitted that IDT had essentially abandoned the Belgium business before West joined IDT"; (3) "[a]fter receiving the benefit of West's contributions, his network, expertise, suggestions and introductions, IDT now generates approximately or more than $1 million per month from the Belgium business." (Opp'n Br. at 18). West testified that he traveled, took part in strategy meetings, provided advice, and

**FOR PUBLICATION**

"refocused" IDT on re-entering the Belgium market. (Opp'n Br. at 10). Additionally, it is undisputed that West made certain introductions to IDT and that the introduction of Hershey Taffel, a former Viatel employee who had worked in Belgium, resulted in Taffel joining IDT.

Defendants counter that plaintiff presented no admissible evidence of *quantum meruit* damages and that the jury award could only have been based on "speculation and conjecture." Defendants argue that IDT's Belgian revenue stream several years after West's departure does not reflect the value of West's contributions. In support, defendants point out that Mr. Taffel was a salesman who testified that he had to build the Belgium distribution network "from scratch basically." (Pl.'s Br. at 17). Even accepting that West's introduction of Mr. Taffel provided IDT with a distribution network, however, defendants argue that this is only one component of the business necessary to produce the revenue stream for the debit card business. IDT points to the testimony of plaintiff's own expert, Erik Skramstad, on this point. Mr. Skramstad testified that a successful debit card business requires four components: intellectual property, distribution channel, platform, and carrier access. Defendants also refer to testimony about the importance of the brand of the card. (Reply Br. at 5). Because no evidence was presented that would allow the jury to assess the reasonable value of either West's contributions to the business or his referral of Hershey Taffel, defendants contend that judgment as a matter of law must be granted with regard to the Belgium distribution network.

Viewing the facts and inferences in the light most favorable to West, the Court accepts that it was West's contributions that led IDT to restart the Belgium business and that West provided a distribution network for that business as well as business advice that contributed to its

**FOR PUBLICATION**

success. The Court also recognizes that business contributions can support recovery in *quantum meruit*, so long as the reasonable value of those suggestions is shown. See, e.g., Kopin v. Orange Prods., Inc., 297 N.J. Super. 353 (App. Div. 1997). The question remaining is whether evidence of the business's revenue stream several years after West's departure was adequate evidence upon which the jury could assess *quantum meruit* damages. The Court now holds that the evidence presented was not adequate. It cannot be reasonably argued that Mr. West's services entitle him to the entire revenue stream of the Belgian business that was built over the course of time and by the efforts of others after West departed IDT. As plaintiff's own expert pointed out, that revenue stream has many components. It follows that West's burden was to produce evidence of the reasonable value of *his* contribution to the business. He produced none. Had he demonstrated the market value of similar consulting, headhunting, and/or brokering services, the matter might be different. He did not, however, and the Court can see no basis upon which the jury could have reliably determined the reasonable value of West's contributions to the Belgian business. Even if the appropriate measure of *quantum meruit* damages was the amount of IDT's gain,[2] the evidence presented would be woefully inadequate and speculative.

**II. Time and Services**

On the question of the reasonable value of West's time and services, plaintiff points to the following evidence: (1) "the bonuses set forth in P2 [the February Document]"; (2) "statements regarding the value of West made by the Defendants' Chairman to IDT's Board of Directors" and "the value of West stated by IDT's president comparing his package to that of

---

[2] See Note 1, supra.

**FOR PUBLICATION**

other IDT executives"; (3) "West's background"; and (4) "West's testimony regarding how he valued his time and services." (Opp'n Br. at 6). Whether the proffered evidence is competent for the purposes of establishing *quantum meruit* damages is the question for the Court.

### A. The February Document

The Court provided the jury with the following general instruction regarding the February Document:

> Much mention of P2 has been made during the trial by the parties. You should know that the Court has previously determined that P2 was not a binding contract between the parties, but only an "agreement to agree," so to speak. Accordingly you cannot afford the document the same weight as a binding agreement. You may not award damages based upon what you might believe to be a "breach" of that document. You may rely, however, if you wish, on P2 for any purpose other than enforcement of the agreement itself, such as to help you in your assessment of the parties' expectations and value of any benefits rendered by any party.

The Court provided a more specific instruction on *quantum meruit* damages, however: "*Quantum meruit* damages are not to be determined on the basis of the February 3 document, that is to say, rather, *quantum meruit* damages are determined solely with reference to reasonable value of services rendered."

In response to the Court's instructions, plaintiff argues that "the jury was free to consider P2 for anything other than enforcement of the document as a binding agreement." (Opp'n Br. at 7). Plaintiff points to West's testimony that the February Document included an up-front "signing bonus" of $1.5 million and 70,000 IDT shares, worth a total of $2.8 million. West further testified that the signing bonus was for him to "go around[,] run around[,] gather assets, [and] make introductions" for the first six months of his employment, actions he claims to have taken.

-10-

**FOR PUBLICATION**

Defendants counter that the Court's *quantum meruit* damages instruction was clear and in accordance with the law. They further argue that West's characterization of the $2.8 million as a signing bonus was first introduced at trial and should be excluded as a result. Finally, defendants point out that West did not produce the assets contemplated by the February Document and that, consequently, the numbers set out in the document are not evidence of the reasonable value of West's services.

As a general matter, as the Court's instruction points out, an unenforceable agreement may be admitted for any purpose other than the enforcement of the agreement itself. See, e.g., Black v. Hesse, 869 F.2d 420, 422 (8th Cir. 1989). In this case, however, the Court expressly and specifically excluded the February Document as the basis for *quantum meruit* damages in its instructions to the jury. It did so because the undisputed facts of the case demonstrate that plaintiff never provided a substantial portion of the value contemplated by the February Document. As such, it is not probative of the reasonable value of plaintiff's services. While the expectation of a bonus may be used to establish the reasonable value of services in appropriate cases, West's characterization of the February Document at trial to include a $2.8 million signing bonus does not revive the document as a competent measure of *quantum meruit* damages. Rather, because the February Document is not probative of the reasonable value of plaintiff's services for the purposes of the *quantum meruit* claim, plaintiff may not rely on it to support the jury award.

FOR PUBLICATION

### B. Statements of IDT Representatives

Plaintiff points to statements by IDT Chairman Howard Jonas and IDT President James Courter regarding West's compensation. Jonas' statement is taken from the minutes of the IDT board of directors meeting of March 13, 2001:

> [The Chairman] informed the Board that the Corporation hired Alfred West, the former CEO of Destia, and the former Vice Chairman of Viatel for approximately $200,000 per year and simultaneously acquired certain of his intellectual property assets and debit card technologies for $2.8 million. In exchange, he agreed to bring all his assets, debit card technologies, and personnel.

(Scholz Aff. Exh. D). In the case of Mr. Courter, West testified that the IDT President told West to watch his back because he had "a $3 million package" that was comparable to other executives who had been at the company for many years. As a result of this statement, plaintiff contends that "[b]ecause West worked at IDT for more than six months, the jury was entitled to simply apportion half of that $3 million package in calculating West's damages." (Opp'n Br. at 8).

The Court disagrees that these statements are competent to establish the reasonable value of West's services. It is patently evident that these numbers are derived directly from the February Document, which the Court has already determined to be an inadequate measure of reasonable value. Jonas' statement, in particular, highlights the fact that the $2.8 million number from the February Document is inextricably linked to assets that were undisputedly never provided. As the Court's instruction makes clear, the jury was *not* entitled to simply apportion half of the value of the February Document to determine *quantum meruit* damages.

FOR PUBLICATION

### C. West's Background

Plaintiff points to West's testimony that he received a $300,000 bonus from Econophone in 1997, that he received a $323,784 salary from that company in 1998, and that he received 4 million shares of Viatel stock in 1999 (which were worth more than $200 million at one point). West also testified that he turned down a job offer from energy firm Econnergy worth "millions of dollars" when he joined IDT.  (Opp'n Br. at 12-13).  Defendants contend that West's former salaries, bonuses, and incentives are "irrelevant to the issue of the reasonable value of the *services West provided to IDT*" because West was a "subordinate" at IDT rather than a founder, CEO, or executive officer as he formerly had been.  Defendants also argue that the rejected job offer from Econnergy is speculative because it was composed largely of equity in the company and because Econnergy is an energy rather than a telecommunications company.  (Reply Br. at 10-11).

The Court finds the available evidence of West's earlier compensation, stock ownership, and job offer to be irrelevant.  West was the founder, CEO, and controlling shareholder of closely-held Econophone and, as such, his compensation there is incomparable to the reasonable value of the services he provided to IDT.  That he received equity in Viatel for the stock in his own company upon the merger of the two is likewise meaningless because it represents the value of West's stock, not his services.  With regard to West's Viatel salary, defense counsel asked West if his salary there was more than $400,000.  West replied "[i]f you say so, it probably was." (Trial Tr. 63:12-15, June 24, 2005).  West provided nothing more than this and did not compare his role as Vice Chairman of Viatel to his role at IDT.  This is not competent evidence of the

**FOR PUBLICATION**

reasonable value of West's services to IDT and certainly cannot support a jury award of $1.5 million.

Turning to the Econnergy offer, the Court does not find that this is competent evidence of reasonable value because it was composed largely of equity in a closely-held corporation. Gary Bondi, the Chairman and founder of Econnergy, testified that he made an offer of $250,000 in total annual compensation along with a 10% equity stake in the company. Valuation of equity in a company that is not publicly traded and operates in a volatile industry is beyond the capability of the jury and the Court. Additionally, the offer of a personal friend to take a partial ownership position in and assume the presidency of an energy company is not a comparable measure of the value of West's services to IDT. Even if the Court were to accept that the annual compensation component of the Econnergy offer is competent evidence of the value of West's services to IDT, which it does not, the result would be the same: plaintiff did not present any evidence that the reasonable value of his services was greater than the approximately $125,000 in compensation that he received.

### D. West's Own Valuation

Plaintiff argues that, "[f]or the purposes of proving his *quantum meruit* claim, it is sufficient that West testified regarding what he discussed, wanted, required, expected, and did." (Opp'n Br. at 26). In support of this proposition, plaintiff points to Eulo v. Deval Aerodynamics, Inc., 430 F.2d 325 (3d Cir. 1970). In that case, the court responded to defendant's argument that it was "entitled to judgment n.o.v. because there was no competent evidence to support the jury's determination of the amount of quantum meruit damages":

**FOR PUBLICATION**

> While the record is somewhat thin on this damages issue, Eulo did testify throughout concerning his duties and what he believed they were worth. The fact that this testimony was in major part intended to demonstrate the existence of an express agreement does not derogate from its competence as regards quantum meruit damages. To hold as DeVal urges would require us, in effect, to invoke the ancient and wisely rejected rule that a party is not competent to testify in his own behalf. We decline to do so.

Id. at 329.  The facts of Eulo are very different from those presented to the Court here, however. In Eulo, plaintiff sought to prove an agreement to receive a 5% commission on government contracts that he procured for the defendant.  Because the substance of Eulo's testimony is uncertain, that case is not determinative of the Court's decision here.  For example, Eulo may very well have testified that he expected to receive a 5% commission and that such commissions were the custom in the industry.  Here, by contrast, West's testimony was limited to his expectations deriving from the February Document, a document incompetent to establish *quantum meruit* damages because of its inextricable link to assets that West never provided to IDT.  While Eulo likely testified as to the fair market value of his services, West made no such showing.

## III.  Defendants' Alternative Motions

Because the Court is in no better position than the jury to determine the reasonable value of West's services to IDT, defendants' alternative motion to reduce the jury award is denied.  On defendants' alternative motion for a new trial, which the Court must decide pursuant to Fed. R. Civ. P. 50(c), the Court likewise denies the motion.  Under Fed. R. Civ. P. 59(a), "[a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons which new trials have heretofore been

**FOR PUBLICATION**

granted in actions at law in the United States." Such reasons include: (1) the verdict is against the weight of the evidence; (2) the verdict is too large or too small; (3) there is newly discovered evidence; (4) conduct of counsel or of the court has tainted the verdict; or (5) there has been misconduct affecting the jury. 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2805 (2d ed. 1995). Here, defendants seem to argue that the verdict is against the weight of the evidence, that the damages are excessive, and that plaintiff's counsel made improper arguments to the jury.

     A district court should generally grant a new trial where the verdict is against the weight of the evidence "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience." Williamson v. Consol. Rail Corp., 926 F.2d 1344, 1353 (3d Cir. 1991). In this case, the weight of the evidence is for the plaintiff on each element of the claim except damages. As the Court's analysis shows, plaintiff did not establish damages because he presented no competent evidence of the reasonable value of his services beyond that which he was paid. Evidence was presented that West had a $3 million annual "package," however, and he did work for IDT for six months. A $1.5 million figure was also part of the February Document. If the Court of Appeals disagrees with this Court's opinion and determines that the evidence presented at trial was competent to support the jury award, it may simply allow the award to stand. In such a case, damages would not be excessive. To the extent that defendants argue that plaintiff's counsel made improper arguments to the jury, the Court is satisfied that its instructions adequately cured any resultant prejudice. In sum, the Court can see no reason to re-try the case.

FOR PUBLICATION

### CONCLUSION

Although the Court is mindful of the weight afforded a jury award, the jury in this case was presented with no evidence upon which the reasonable value of Mr. West's services could be "intelligently and fairly" determined. Forced to speculate, the jury may have simply halved the $3 million annual figure emphasized by plaintiff to compensate Mr. West for his six months of work. How the jury actually reached the figure is of no importance, however, because there was no evidence upon which it could adequately rely. As a matter of law, the Court cannot allow the reasonable value of Mr. West's services to be determined in such haphazard fashion without competent evidence in support. While plaintiff has argued that the jury was entitled to rely "on the entire record" to determine damages, an analysis of that record indicates that it is without a single piece of competent evidence to establish *quantum meruit* damages. Defendants' motion for judgment as a matter of law is granted. Defendants' alternative motions for a new trial or for a reduction of the jury award are denied. Plaintiff's motion for prejudgment interest is denied as moot.

<u>s/William H. Walls</u>
United States Senior District Judge

**FOR PUBLICATION**

**Appearances**

Robert A. Mintz
Joseph R. Scholz
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

Barry S. Pollack
Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109
    Attorneys for Plaintiff

Donald A. Robinson
Robinson & Levelli
Two Penn Plaza East
Newark, NJ 07105-2237

Carolyn Traister Schiff
McDermott Will & Emery LLP
50 Rockefeller Plaza
New York, NY 10020

Alan M. Grayson, Esq.
Grayson & Kubli, P.C.
Suite 230
1420 Spring Hill Road
McLean, VA 22102
    Attorneys for Defendants