**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ALFRED WEST, | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civil Action No. 01-4372 (WHW) |
| | : | |
| IDT CORPORATION and IDT TELECOM, INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**Walls, Senior District Judge**

Defendants IDT Corporation and IDT Telecom, Inc. (collectively "IDT") and Plaintiff Alfred West have all moved, under Federal Rule of Civil Procedure 56(c), for summary judgment. These motions are decided on the papers pursuant to Federal Rule of Civil Procedure 78. Defendants motion is granted in part and denied in part. Plaintiff's motion is denied in its entirety.

### FACTUAL & PROCEDURAL BACKGROUND

As the Court is writing only for the parties, a detailed description of the facts underlying this case is unnecessary here and can be found in this Court's previous opinions on the summary judgment motions, (Op. dated July 14, 2004, Dkt. No. 107), and the motion for judgment as a matter of law, (Op. dated May 25, 2006, Dkt. No. No. 200). In brief, this matter involves a dispute arising out of a February 3, 2001 document (the "February 3 document") in which:

IDT and Alfred West agree that

1) IDT will pay West $200,000 per year for 5 years

NOT FOR PUBLICATION

2)  Alfred will work exclusively for IDT for 5 years

3)  IDT will in six months buy "Westco" a business to be incorporated which will contain all West's intellectual property e.g. presto and debit card business (mostly european) and any rights due from Viatel

4)  If Viatel rights are not transferable West will sell to IDT at cost. For next six months West will rent intellectual property for $1 for next six months

IDT will pay 70,000 shares and one and a half million dollars cash each year for 5 years (or stock at West's option) to be paid in advance (first date of each year starting Feb. 13, 2001 and ending Feb. 13, 2005. (Equates roughly to $14,300,000 today

5)  The parties will complete formal contracts as soon as possible but this is binding

6)  West may quit if unhappy after 3 years and payout will continue regardless

7)  Final agreement will be structured so as to best minimize taxation for all parties.

(Pls' Exh. G.)  The facts surrounding what happened next are hotly disputed.  However, it appears that following the signing of the document, West began working at IDT and received a salary. The nature and quality of service he rendered is disputed, as are the representations that IDT made regarding his hiring and the intent of the parties regarding the nature of the agreement. It is undisputed that IDT never made the February 13 payment discussed in the February 3 document and that the "formal contracts" contemplated by the document were never entered into. The relationship between the parties disintegrated and in August 2001, West was terminated.

West then brought this lawsuit alleging a number of claims including, breach of contract, breach of implied covenant of good faith and fair dealing, misrepresentation, tortious interference, unfair competition, promissory estoppel and *quantum meruit* claims.  IDT then brought a number of counterclaims.  On July 14, 2004, this Court granted summary judgment in favor of the defendants on the plaintiff's breach of contract and breach of implied covenant of

NOT FOR PUBLICATION

good faith and fair dealing claims on the grounds that the February 3 document was not a valid

contract.  This Court also granted summary judgment on the fraud and negligent

misrepresentation, tortious interference, and unfair competition claims; and denied summary

judgment with respect to the promissory estoppel and *quantum meruit* claims.  This Court also

granted summary judgment in favor of the plaintiff on the defendants' counterclaims, including

defendants' counterclaim for breach of contract, holding that the claim was mooted by the

Court's decision as to the existence of the contract. (See July 14, 2004 Op. at 24.)   A trial was

held on the remaining claims and the jury rendered a verdict in favor of IDT on the promissory

estoppel claim and in favor of West on the *quantum meruit* claim.  Defendants then moved for

judgment as a matter of law on the *quantum meruit* claim, which this Court granted on May 25,

2006.

West appealed this Court's grant of summary judgment on the breach of contract, breach

of implied covenant of good faith and fair dealing, and misrepresentation claims, as well as the

grant of the judgment as a matter of law on the *quantum meruit* claim.[1]  The Third Circuit held

that this Court had "erred in concluding that, as a matter of law, the agreement was not a binding

contract." West v. IDT Corp., No.  05-4023, 06-2928, 06-3000, slip op. at 8 (3d Cir. July 20,

2007)(hereinafter "Third Cir. Op.")  The Circuit found that "there are several important factual

disputes which bear on the binding nature of the agreement [including]... whether the parties

intended the agreement to be binding, whether their actions following the signing of the

_____

[1] The plaintiff did not appeal the grant of summary judgment on the other claims. (Third Cir. Op. at 3 fn. 2.)

-3-

**NOT FOR PUBLICATION**

agreement, including their performance in conformance with the agreement and representations made to others, clarified any ambiguity as to their intent, and whether the terms of the agreement set forth all the important particulars of the relationship between them." Id. at 5.  The Circuit citing to these material issues held that "[a]lthough it is not clear that these factual disputes are such that, after a proper application of New Jersey law, they would prevent partial summary judgment in West's favor on the question of whether the agreement is binding, it is quite clear that they prevent summary judgment against him." Id. at 6.  On remand, the Circuit directed this Court to "determine the contours of New Jersey law, and, if similar to that discussed in Adjustrite, determine whether a fair and proper balancing of the relevant factors supports a finding in favor of West or whether genuine issues of material fact require that a trial be held to determine if the agreement constitutes a binding contract." Id. at 9.  The Circuit did not address this Court's other rulings, however, it stated that "[o]f course, on remand, if the District Court finds that the agreement was a binding contract, it will need to revisit its other rulings, which were based upon the non-binding nature of the agreement ... including the District Court's grant of judgment as a matter of law for IDT on West's quantum meruit claim."  Id. at 4-5 fn. 4.

Both sides have now cross-moved for summary judgment. Defendants have also requested that their breach of contract cross-claim be reinstated in light of the reversal of this Court's determination that the agreement was non-binding as a matter of law.[2]

---

[2] Defendants' request is better addressed in response to the defendants' recently filed motion to reinstate their breach of contract counterclaim. (Dkt. No. 240.)  The Court will not render a decision on this request in this opinion.

NOT FOR PUBLICATION

**LEGAL STANDARD**

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. See id. at 248.  The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. See Celotex Corp. v. Catrett, 477 U.S. 317, 318 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  To survive a motion for summary judgment, a non-movant must present more than a mere scintilla of evidence in his favor.  Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005).  The non-moving party must go beyond the pleadings and, by affidavits or other evidence, designate specific facts showing that there is a genuine issue for trial. Celetex, 477 U.S. at 324; Fed. R. Civ. P. 56(e).  Such affidavits must be based "on personal knowledge," establish "such facts which would be admissible," and "show affirmatively that the affiant is competent to testify in all matters stated therein." Maldonado v. Ramirez, 757 F.2d 48, 50 (3d Cir. 1985); see also J. Moore, W. Taggerts & J. Wicker Moore's Federal Practice § 56.22[1] (2d ed. 1985).

NOT FOR PUBLICATION

"[C]onclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment." Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3d Cir. 1972); see also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253 (1968).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249.  In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party.  Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002).

**ANALYSIS**

**I.    Breach of Contract Claim**

 To prevail on a breach of contract claim under New Jersey law, a plaintiff must prove four elements: (1) a valid contract existed between plaintiff and defendant; (2) defendant breached this contract; (3) plaintiff performed under this contract; and (4) plaintiff was damaged as a result of defendant's breach." Video Pipeline, Inc. v. Buena Vista Home Entm'nt, Inc., 275 F. Supp. 2d 543, 566 (D.N.J. 2003) (citing Coyle v. Englander's, 199 N.J. Super. 212 (App. Div. 1985)).

**A.    West's Motion for Summary Judgment**

*i.    Existence of the Contract*

The Third Circuit concluded that, when the evidence was viewed in the light most favorable to the plaintiff, material issues of fact remained which precluded a finding that, as a

NOT FOR PUBLICATION

matter of law, the February 3 document was not a valid binding contract. The Circuit did not,

however, decide the issue of whether the evidence, if viewed in the light most favorable to the

defendant, compelled summary judgment in favor of the plaintiff and the conclusion that the

February 3 document was in fact a binding contract. (Third Cir. Op. at 6.) That is the issue that

this Court must now determine in order to decide plaintiff's summary judgment motion.

> Under New Jersey law:
>
> Parties may or may not be bound by their preliminary agreement when they
> contemplate that its terms will later be reduced to a formal written contract.
> Whether the preliminary agreement is binding is a matter of the parties' intent. If
> the parties intend to be bound by their preliminary agreement and view the later
> written agreement as merely a memorialization of their agreement, they are bound
> by their preliminary agreement. On the other hand, if the parties intend that their
> preliminary agreement be subject to the terms of the later contract, they are not
> bound by their preliminary agreement.

Morales v. Santiago, 217 N.J. Super. 496, 501-02 (App. Div. 1987)(internal citations omitted).

"The ultimate question is one of intent." Berg Agency v. Sleepworld-Willingboro, Inc., 136 N.J.

Super. 369, 374 (App. Div. 1975)(quoting Comerata v. Chaumont, Inc., 52 N.J. Super. 299, 305

(App. Div. 1958)).

In order to determine whether the parties intended to be bound, courts look to a number of

"element[s] in the evidential panorama underlying a factual finding of intent and enforceability."

Berg, 136 N.J. Super. at 377. These include the "document itself and the underlying facts

relating to the negotiations leading to its execution." Id. at 423. "Absence of essential terms from

a preliminary agreement is persuasive evidence that the parties did not intend to be bound by it."

Morales, 217 N.J. Super. at 502. "However, it is not necessary for a writing to contain every

possible contractual provision to cover every contingency in order to qualify as a completed

-7-

NOT FOR PUBLICATION

binding agreement.... So long as the basic essentials are sufficiently definite, any gaps left by the parties should not frustrate their intention to be bound." Berg, 136 N.J. Super. at 423-34. Nonetheless, "[t]o be enforceable, a contract must be sufficiently definite in its terms that the performance to be rendered by each party can be ascertained with reasonable certainty." Friedman v. Tappan Dev. Corp., 22 N.J. 523, 531 (1956).

Courts may also look to a number of additional factors to determine the parties' intent, including: whether performance has been undertaken, Comerata, 52 N.J. Super. at 306 ("The undertaking of performance, concurred in by the other party, is generally taken as strongly probative of an intention on the part of parties who have orally agreed to terms of a contract to be bound thereby notwithstanding the later execution of a formal contract is contemplated."); the prior dealings of the parties, Moran v. Fifteenth Ward Bldg. & Loan Ass'n, 25 A.2d 426, 430 (N.J. Ch. 1942) (considering the parties actions in a previous sale in determining whether the parties intended to be bound by the preliminary agreement); industry practice, Marilyn Manson, Inc. v. N.J. Sports & Exposition Auth., 971 F. Supp. 875, 889 (D.N.J. 1997) ("The Court [applying New Jersey law] is persuaded by plaintiffs' explanation that contracts in the concert music industry are not reduced to writing until a late date."); and the nature and complexity of the transaction, Surf & Turf Dev., LLC  v. Cestone, 2006 WL 3025512, *2 (N.J. Super. App. Div. Oct. 26, 2006) ("In evaluating intention [to be bound], courts must consider the circumstances

NOT FOR PUBLICATION

surrounding the oral agreement alleged. Facts such as the nature and complexity of the transaction ... are relevant.").[3]

While in general the existence of a contract is a question of law for the Judge to decide, "[w]hen the evidence is conflicting it is for the jury to determine whether a contract does in fact exist, and, if so, what are its terms?" American Lumber & Mfg. v. Atlantic Mill & Lumber Co., 290 F. 632, 634 (3d Cir. 1923); see also Elliot & Frantz, Inc. v. Ingersoll-Rand Co., 457 F.3d 312, 327 (3d Cir. 2006) (quoting Driscoll Constr. Co. v. Dep't of Transp., 371 N.J. Super. 304, 314 (App. Div. 2004) ("where there is uncertainty, ambiguity or the need for parol evidence in aid of interpretation, then the doubtful provision should be left to the jury.")

As the Third Circuit noted "there are several important factual disputes which bear on the binding nature of the agreement. Among these are whether the parties intended the agreement to be binding, whether their actions following the signing of the agreement, including their performance in conformance with the agreement and representations made to others, clarified any

---

[3] The Third Circuit directed that this Court determine whether New Jersey law is consistent with the New York law articulated in Adjustrite Systems, Inc. v. GAB Business Services, Inc., 145 F.3d 543 (2d Cir. 1998). (See Third Cir. Op. at 6 fn. 5.)  In Adjustrite, the Second Circuit discussed the following four factors which are to be considered in determining whether a preliminary agreement is a binding contract: "(1) whether there has been an express reservation of the right not to be bound in the absence of writing; (2) whether there has been partial performance on the contract; (3) whether all the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." 145 F.3d at 549.  While the courts applying New Jersey law have not articulated such a neat formulation of the factors to be considered in evaluating the parties' intent and may use slightly different terminology to describe these factors, all the Adjustrite factors are factors which are considered by New Jersey courts: the express language of the agreement, whether there has been partial performance, whether all essential terms have been agreed upon, and industry practice and nature of the transaction.

NOT FOR PUBLICATION

ambiguity as to their intent, and whether the terms of the agreement set forth all the important particulars between them." (Third Cir. Op. at 5.)  Most striking is that fact that the parties are in deep conflict as to what their obligations under the contract were.  This alerts the Court to the fact that there may be material questions as to whether all the essential terms were contained in the contract. See Elliot & Frantz, 457 F.3d at 327 ("[T]he parties' differing constructions of the provision underscore its vagueness.... As a result, the breach of contract claim based on this provision... was particularly ill-suited for disposition on a motion for summary judgment.").  For example, according to the defendants the term "IST will ... buy 'Westco' a business to be incorporated which will contain all West's intellectual property e.g. presto and debit card business (mostly european) and any rights due from Viatel" contemplated that IDT would obtain four specific businesses, including the Presto!Card Business and the European Debit Card Business, which West claimed that Viatel had given him as part of his settlement. (Defs' Opp. at 15.) Whereas, the plaintiff contends that under this provision IDT merely assumed the risks of the "scope and value of what West would gather, deliver and develop" in his negotiations with Viatel.  (Pls' Reply at 9.)  On its face, the plain meaning of the language of this provision does not compel either one of these readings nor does it address what is to occur in the eventuality that West was unable to obtain any rights or businesses from Viatel.[4]  The absence of such a potentially essential term points against the conclusion that the February 3 document was a binding contract.

_____

[4] As the Third Circuit noted, the February 3 document addressed the possibility that the "Viatel rights are not transferable," (Third Cir. Op. at 7-8), however it did not address the possibility that West would not be able to obtain any rights from Viatel.

-10-

NOT FOR PUBLICATION

When the evidence is viewed in the light most favorable to the non-moving party, the defendant IDT, these factual disputes require jury determination as to whether the February 3 document was a binding contract and if so, what the terms of that contract were. Plaintiff's motion for summary judgment on his breach of contract claim is denied.

**B.      IDT's Motion for Summary Judgment**

The defendants argue that even if this Court were to conclude that the February 3 document was a binding contract, they are entitled to summary judgment because West did not and could not perform his obligations under the February 3 agreement. Furthermore, the defendants argue that their breach must be excused because of a number of affirmative defenses.

>          *i.        West's Performance*

The defendants point to the following language in the February 3 document:

> IDT will in six months buy "Westco" a business to be incorporated which will contain all West's intellectual property e.g. presto and debit business (mostly European) and any rights due from Viatel.

They contend that through this language the parties agreed that West would sell to IDT the following: (1) the European Debit Card Business, (2) the Presto!Card Business, including all of the intellectual property associated with the Presto!Card, (3) the Viatel Network Rights, and (4) a Local Access Business. (Defs' Mem. at 13.)  They point to evidence which supports that fact that West did not in fact provide any of these rights and businesses, or any assets at all, to IDT. Specifically, they point out that West provided neither Presto! assets, nor "debit card business (mostly European)."  Defendants argue that because West did not perform under the agreement,

-11-

NOT FOR PUBLICATION

he can not establish one of the elements required to make out a breach of contract claim, and

therefore summary judgment should be granted in their favor on the breach of contract claim.

  The plaintiff, on the other hand, contends that the February 3 document merely required,

by its plain language and the negotiations surrounding it, that West work for IDT and make good

faith efforts to transition assets and rights from Viatel, which according to the plaintiff he did.

(Pl's Opp. at 13.)  He argues that during their negotiations it was agreed that IDT would "assume

the risk" as to what he would be able to negotiate from Viatel.  Furthermore, he claims that he

has presented evidence reflecting his performance, specifically that: (1) he worked for IDT for

six months; (2) he gathered and made available Presto! intellectual property, including exclusive

ownership over trademarks and domain names, as well as access to Presto! software; (3) he

provided "rate decks" for European calling cards to IDT; (4) he brought European personnel to

IDT, which chose not to hire them; (5) he introduced IDT to approximately a dozen European

distribution networks, most of which IDT chose to reject, but one of which has generated revenue

for years reaching more than $1 million in monthly sales for IDT; (6) he presented opportunities

for preferential rates that were rejected by IDT; (7) he formed Wesco; (7) he signed a non-

compete agreement; and (9) he built a viable UNE-P product that IDT chose not to launch until

after discovery had closed in this matter. (Id. at 14.)  Alternatively, he contends that even if the

contract required him to deliver more to IDT than he was able to obtain from Viatel, his failure to

perform is excused by IDT's breach when it failed to pay him $2.8 Million "in advance."

  Although the interpretation of a written contract usually presents a question of law for the

trial judge to resolve, when "there is uncertainty, ambiguity or the need for parol evidence in aid

NOT FOR PUBLICATION

of interpretation, then the doubtful provision should be left to the jury." Great Atl. & Pac. Tea

Co. v. Checchio, 335 N.J. Super. 495, 502 (App . Div.2000) (citing Michaels v. Brookchester,

Inc., 26 N.J. 379, 387 (1958)); see also Pittston Co. Ultramar America Ltd. v. Allianz Ins. Co.,

124 F.3d 508, 523 (3d Cir. 1997).  In this case, the Court cannot conclude that, as a matter of

law, the plain language of the February 3 document compels the reading advanced by the

defendants.  The document states that IDT will buy Westco, a business which will contain "all

West's intellectual property *e.g.* presto and debit business (mostly European) and any rights due

from Viatel." (emphasis added).  The document's use of the term "e.g." or "for example" before

listing the presto and debit businesses could be interpreted, if viewed in the light most favorable

to the plaintiff, as is required when considering defendants' summary judgment motion, to mean

that presto and the debit business are merely provided as examples to help explain what type of

intellectual property the document contemplates. Alternatively, if viewed in favor of the

defendants, the phrase could have been a means of setting out the specific intellectual property

that West would be obligated to provide to IDT.  How the parties intended to use the term

requires evaluation of the "relevant circumstances surrounding the transaction, as well as

evidence of the parties' course of dealing, usage and course of performance."  Elliot & Frantz,

457 F.3d at 328.  Because this ambiguous term requires jury interpretation, the Court cannot

conclude that IDT is entitled to summary judgment on plaintiff's breach of contract claim.

Furthermore, there are significant factual disputes as to what, if anything, West actually provided

to IDT.  These disputes require jury determination and also preclude summary judgment.

-13-

NOT FOR PUBLICATION

      *ii.*    *Affirmative Defenses*

          a.    Failure of Consideration

Defendants contend that they are entitled to rescission of the contract because West failed to provide the assets which IDT was to obtain under the February 3 document. Defendants contend that their payment of "70,000 shares and one and a half million dollars cash for 5 years" was dependant on West's ability to provide the assets described in the agreement. For the same reasons that the Court can not grant summary judgment in favor of the defendants based on the plaintiff's failure to perform under the contract, the Court can not grant it based on this defense. Material questions of fact remain as to what West's obligations were under the contract and whether West failed to perform them.

          b.    Frustration of Material Purpose

"Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary." Unihealth v. U.S. Healthcare, Inc., 14 F. Supp. 2d 623, 634 (D.N.J. 1998) (quoting Restatement (Second) Contracts § 265 (1981)). Defendants contend that the purpose of the February 3 document was to purchase from West the rights and businesses set out in that document, and that when it became clear that West did not possess or could not transfer, sell or rent those rights, the purpose of the agreement was frustrated. As discussed in the context of the plaintiff's performance under the contract, the purpose of the February 3 document cannot be established without a jury determination of a

NOT FOR PUBLICATION

number of material disputed facts as to the parties' intents in signing the February 3 document.  If

the evidence were viewed in the light most favorable to the plaintiff, a jury could conclude that

the purpose of the February 3 document was not for West to provide any specific assets, but

merely whatever assets he was able to obtain from Viatel.  For this reason, the Court cannot at

this time grant summary judgment in favor of the defendants based on this defense.

c.      Bilateral Mistake

"As a general rule, when parties on entering into a transaction that affects their

contractual relations are both under a mistake regarding a fact assumed by them as the basis on

which they entered into the transaction, it is voidable by either party if enforcement of it would

be materially more onerous to him than it would have been had the act been as the parties

believed it to be."  Beachcomber Coins, Inc. v. Boskett, 166 N.J. Super. 442, 445 (App. Div.

1979)(citing Restatement, Contracts § 502 at 961 (1932)); see also

Defendants contend that entering into the February 3 document, both Jonas and West

assumed that West possessed the rights and businesses contemplated by the agreement and that

he could transfer, sell, or rent them to IDT.  They argue that it was later discovered that this

assumption was a mistake, since West did not possess these rights and businesses. Therefore,

they claim, the contract should be voided because of a mutual mistake of a basic assumption of

the contract.  (Defs' Mem. at 24.)

Whether the defendants can avail themselves of this defense depends on the highly

contested issue of the parties' assumptions as to what exactly West possessed at the time of the

signing of the February 3 document.  See Lampley v. Davis Mach. Corp., 219 N.J. Super. 540,

-15-

NOT FOR PUBLICATION

550 (App. Div. 1987) ("A claimant's attempt to avoid a [contract] based on mistake of both

parties will frequently turn on a determination, in light of the circumstances, of the basic

assumptions of the parties at the time of [entering into the contract]").  Since this issue raises

many questions of material fact, the Court cannot grant summary judgment in favor of the

defendants based on this defense.

d.      Unilateral Mistake

Alternatively, defendants argue that they are entitled to recision of the contract based on

their unilateral mistake as to what West was in possession of and what he could transfer, sell or

rent to them.  However, "unilateral mistake of a fact unknown to the other party is not ordinarily

grounds for avoidance of a contract."  Intertech Assoc. v. Paterson, 255 N.J. Super. 52, 60 (App.

Div.  1992).  "To qualify for [this type of ] equitable relief ... [the party seeking the relief] must

show special circumstances justifying a departure from the generally controlling principle that

parties are bound by the contracts they make for themselves." Cataldo Const. Co. v. County of

Essex, 110 N.J. Super. 414, 418 (Ch. Div. 1970).  In these special circumstances that warrant

rescission "[t]he mistake must be of so great a consequence that it would be unconscionable to

enforce the contract, the matter as to which the mistake was made must relate to a material

feature of the contract, the mistake must have occurred notwithstanding the exercise of

reasonable care by the party making it, and rescission must not cause serious prejudice to the

other party, except for loss of its bargain." Ctr. 48 Ltd. P'ship v. May Dept. Stores Co., 355 N.J.

Super. 390, 412 (App. Div. 2002).

-16-

NOT FOR PUBLICATION

When the facts in this case are viewed in the light most favorable to the plaintiff, the Court simply cannot conclude that, as a matter of law, this is one of those "special circumstances" in which the defendants are entitled to recision of the February 3 document on unilateral mistake grounds.

## II.  **Breach of Implied Covenant of Good Faith and Fair Dealing**

"[I]n every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract; in other words, in every contract there exists an implied covenant of good faith and fair dealing." Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420 (1997).  "A party to a contract breaches the covenant if it acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation." Black Horse Lane Assoc. v. Dow Chem. Corp., 228 F.3d 275, 288 (3d Cir. 2000).  In order to establish a claim for breach of this covenant, the plaintiff must demonstrate that the defendants acted in bath faith or with an improper motive.  Seidenberg v. Summit Bank, 348 N.J. Super. 243, 261 (App. Div. 2002).  New Jersey court have admonished that care should be exercised in making this determination because "an unduly expansive version of bad faith... 'could become an all-embracing statement of the parties' obligations under contract law, imposing unintended obligations upon parties and destroying the mutual benefits created by legally binding agreements.'"  Id. at 262 (quoting Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 92 (3d Cir. 2000)).  While a variety of factors are to be considered in making the determination as to whether the conduct constitutes a breach of the implied covenant of good faith and fair dealing, "[u]ltimately,

-17-

NOT FOR PUBLICATION

however, the presence of bad faith is to be found in the eye of the beholder or, more to the point, in the eye of the trier of fact." <u>Id.</u> at 263.

Plaintiff claims, without citation to trial testimony or the record, that the testimony of West, Miller and non-party David Stern establishes that defendants breached this covenant through "str[inging] West along, refus[ing] to hire the personnel he brought to IDT, prevent[ing] him from obtaining assets from Viatel, falsely inform[ing] him of 'administrative' delays for payments, exploit[ing] his services, ... employ[ing] a wait-and-see approach....[and,] while accepting benefits from West and leading him (and the investing public) to believe that the parties had concluded the terms of the deal, ... performing an undisclosed due diligence." (Pl's Opp. at 29.)  Defendants, on the other hand, point to documents and testimony in support of their contention that IDT provided resources to West and attempted to assist him in bringing the Rights and Business to IDT. (Defs' Reply at 14.)

Since the question of whether the defendants breached the covenant of good faith and fair dealing is a factually intensive determination, if the evidence were to be viewed in the light most favorable to the plaintiff[5], a reasonable jury could conclude that the defendants had breached the implied covenant.  Defendants' motion for summary judgment on the breach of implied covenant of good faith and fair dealing is denied.

---

[5] As a general rule the plaintiff must point to citations in the record which support his contentions that material questions of fact exist, <u>see</u> <u>Celetex</u>, 477 U.S. at 324; Fed. R. Civ. P. 56(e), however, since the plaintiff has identified specific witness whose testimony at trial he claims supports his contentions and the defendants have not objected to these representations of the testimony provided, the Court will deem this to be sufficient at this stage.

-18-

NOT FOR PUBLICATION

II.     **Misrepresentation Claim**

In its July 14, 2004 Opinion, this Court granted summary judgment on plaintiff's misrepresentation claim based on the following two statements, which plaintiff claimed were misrepresentations: (1) IDT's chairman, Howard Jonas, "stated that IDT already had the structure in place to facilitate the prompt transition and development or Presto! Card and debit card business to IDT." (Complaint ¶¶ 29, 71); and (2) Jonas promised to provide Plaintiff with additional resources for Plaintiff to build his business opportunities at IDT such as recruiting additional personnel, paying signing bonuses and developing products at IDT. (Id.)  See July 14, 2004 Op. at 9-12.  This holding is not disturbed by the Third Circuit Opinion as it is in no way dependent on this Court's prior conclusion that the February 3 document was not a binding contract.

West now alleges that the phrase "this is binding" used in the February 3 document gives rise to liability against IDT for misrepresentation because Jonas actually intended IDT's performance to be conditional.  In support of this contention, the plaintiff cites to Brittingham v. Huyler's, 118 N.J. Eq. 352 (N.J. Ch. 1935), in which the court stated "it is fraud where at the time of making the promise, the promisor's intention to perform was dependent upon contingencies known to the promisor and unknown to the promisee."  Id. at 355-56.

Defendants contend that, as a matter of law, a fraudulent misrepresentation claim can not be maintained on the allegation that a party to a contract never intended to perform when it entered into the contract. The courts in this District appear to distinguish between actions for "fraudulent inducement extraneous to the contract," which can be maintained alongside the

NOT FOR PUBLICATION

breach of contract action, and actions alleging "fraud in its subsequent performance," which are

subsumed in the contract claim.  Lo Bosco v. Kure Eng'g, 891 F. Supp. 1020, 1032 (D.N.J.

1995); see also Liebholz v. Harriri, 05-cv-5148 (DRD), 2006 WL 2023186 (D.N.J. July 12,

2006) ("[A]lthough as a general rule a breach of contract may not be converted into a fraud claim

for the simple fact of breach, New Jersey courts have also recognized that where, as here, a party

is alleged to have been fraudulently induced into entering a contract, that party may maintain

allegations of fraud alongside the contract claim").

      However, in Gleason v. Norwest Mortgage, Inc., 243 F.3d 130 (3d Cir. 2001), the Third

Circuit recognized that a "morass" exists in the interpretation of New Jersey law on this issue:

> No New Jersey Supreme Court case holds that a fraud claim cannot be maintained
> if based on the same underlying facts as a contract claim.... The question of the
> continuing validity of fraud claims in cases involving frustrated economic
> expectations under New Jersey law is very complex and troublesome.... The New
> Jersey District Courts still hold that fraud claims not extrinsic to underlying
> contract claims are not maintainable as separate causes of action.... New Jersey
> state courts have not agreed with the District Courts' interpretation.... The New
> Jersey Supreme Court still has not decided the issue. We will avoid predicting
> New Jersey law by deciding the fraud issue on its merits.

Id. at 144 (internal citations omitted)(quoting Vanguard Telecomm., Inc. v. Southern New

England Tel. Co., 900 F.2d 645, 654 (3d Cir. 1990)).  This Court will, like the Third Circuit in

Gleason and Vanguard, "decline to wade into this morass" and will examine the fraud issue on

its merits.[6]

---

     [6] If this Court were to apply the distinction utilized by the district courts, West's
fraudulent misrepresentation claim based on this statement, if he were able to establish one,
would probably fall into the category of "fraudulent inducement" to enter into the contract claims
which are permitted alongside breach of contract claims by District of New Jersey courts.

NOT FOR PUBLICATION

In order to establish a claim for fraudulent misrepresentation under New Jersey law, a plaintiff must establish: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon; and (5) resulting damages." Alexander v. CIGNA Corp., 991 F. Supp. 427, 435 (D.N.J. 1998).  Allegations of fraud must be proved by clear and convincing evidence. Id.

"[I]n order to constitute a fact, a statement's content must be susceptible of 'exact knowledge' at the time it is made." Id.  "Statements as to future or contingent events, to expectations or probabilities, or as to what will or will not be done in the future, do not constitute misrepresentations even though they may turn out to be wrong." Id.  However, "where a promise is given and the promisor knows at the time of promising that he has no intention of fulfilling it, the promise will constitute a misstatement or fact and may support an allegation of fraud." Leibholtz, 2006 WL 2023186, at * 8 (quoting LoBosco, 891 F. Supp. at 1032).

In support of his misrepresentation claim plaintiff, without citation to the record or evidence, states that "Jonas claims that when he employed the phrase 'this is binding' in the Contract, he actually meant that it was only conditionally binding." (Pls. Opp. at 29.)  This does not satisfy the plaintiff's burden to survive summary judgment. See United States v. Byock, 130 Fed. Appx. 594 (3d Cir. 2005) ("Defeating a motion for summary judgment requires the non-moving party to make a showing sufficient to establish the existence of each element essential to that party's case, and on which that party will bear the burden of proof at trial.") (quoting Celotex Corp., 477 U.S. at 322)).  The plaintiff has failed to advance any evidence to

-21-

NOT FOR PUBLICATION

establish the second and third elements of fraudulent misrepresentation – IDT's knowledge as to

the falsity of the statement and its intention that West rely on that misrepresentation.  Even if the

Court accepts plaintiff's representation that Jonas intended that the February 3 document be

binding only if certain conditions were met, this does not establish that his statement was a

misrepresentation.  If anything, the argument advanced by the plaintiff demonstrates a

misunderstanding between the parties as to the meaning of the terms used or a misunderstanding

by Jonas as to how the phrase would be understood.  Plaintiff has advanced no evidence from

which a reasonable jury could conclude that by using the phrase "this is binding" Jonas knew that

he was creating a binding agreement which he, at the time he made the statement, had no

intention of performing under, and that in making that statement he knew that it would induce

West to enter into the agreement. See Flanagan v. Minn. Corn Processors, Inc., 96-cv-2633

(DRD), 1997 U.S. Dist. LEXIS 24182, *20 (D.N.J. Aug. 19, 1997) (rejecting claim for

fraudulent misrepresentation based on the defendant's statement that "we have a deal" because

plaintiff had failed to set forth facts sufficient to establish that defendants had unequivocally

expressed an intention to fulfill the obligations of a joint venture).

     For these reasons, summary judgment with respect to the fraudulent misrepresentation

claim is granted in favor of the defendants.  Plaintiff's motion for summary judgment on this

claim is denied.

NOT FOR PUBLICATION

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is granted with

respect to plaintiff's fraudulent misrepresentation claims and denied with respect to all other

claims.  Plaintiff's motion is denied in its entirety.


                                                        **s/William H. Walls**
                                                        United States Senior District Judge




**Appearances**

Joseph R. Scholz, Esq.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

Barry S. Pollack, Esq.
Joshua L. Solomon, Esq.
Courtney M. Baigrie, Esq.
Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109
                            Attorneys for Plaintiff

Donald A. Robinson, Esq.
Robinson & Levelli
Two Penn Plaza East
Newark, NJ 07105-2237

Carolyn Traister Schiff, Esq.
McDermott Will & Emery LLP
50 Rockefeller Plaza
New York, NY 10020

**NOT FOR PUBLICATION**

Alan M. Grayson, Esq.
Grayson & Kubli, P.C.
Suite 230
1420 Spring Hill Road
McLean, VA 22102
                    Attorneys for Defendants